## ARCH THURMOND v. THE STATE.

### *No. 1005.    Decided May 20th, 1896.*

**1.  Selection of Jury—Practice.**

When the case was called for trial, a number of the regular jurors upon the list were out trying a case, and only sixteen of the twenty-four names on the list were present; out of these seven were secured, and the jury was completed with talesmen; and the contention of defendant that there should have been twenty-four jurors in the box from which the panel was to be constituted, is not maintainable.  The practice of the court was correct.  Code Crim. Proc., Arts. 683-686.

**2.  Theft of Cattle—Evidence of Copy of Record of Marks and Brands.**

On a trial for theft of one head of cattle, the same being an unmarked and unbranded calf, it was competent to introduce in evidence a certified copy of the record of marks and brands of the county to show the ownership of the cow, the mother of the calf, and thereby establish the ownership of the calf.

**3.  Same—Ownership—Charge.**

On a trial for theft of one head of cattle, alleged to be the property of one Y., a charge of court which instructed the jury, "that they must believe, beyond a reasonable doubt, before they could convict the defendant, that he fraudulently took from Y., the head of cattle charged; and that the same was his personal property and taken without the consent of said Y."  Held:  It was absolutely necessary for the jury, under this charge, to find that the animal was not the property of defendant as claimed by him; and, upon this issue of ownership, it was sufficient.

APPEAL from the District Court of Jones.   Tried below before Hon. ED. J. HAMNER.

Appeal from a conviction for theft of one head of cattle; penalty, two years' imprisonment in the penitentiary.

The case is sufficiently stated in the opinion.

*Leggett & Cunningham*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of the theft of one head of cattle, and given two years in the penitentiary, and prosecutes this appeal.   The defendant assigns as error the fact that as many as twenty-four jurors were not drawn and placed in the box when the jury was empaneled, from which the jury in this case was to be constituted. The bill of exceptions shows that a number of the regular list of jurors was out, trying a case, at the time, and that as many as twenty-four of the regular jury were not then in attendance on the court.   The court refused to wait on the other jury to come in, and he certifies that they remained out some nineteen hours after the verdict in the present case was returned into court; that sixteen jurors were in attendance on the court when this case was called for trial, and their names were placed in the box; and that seven jurors were secured from said list, and then the talesmen were summoned out of which the remainder of the jury was secured.   In this action of the court there was no error.   See, Code Crim. Proc. 1895, Arts. 683-686.   Nor was there any error in the admission of the record of the copy of the marks and brands of Jones

County, showing the record of the marks and brands of the cattle of F. D. Young as recorded in said county. While the calf in question was not marked and branded, its ownership depended on the fact that it was the calf of a cow belonging to F. D. Young; and it was competent to introduce the record copy of marks and brands to show the ownership of said cow, and so establish the ownership of said calf. Nor was it error for the court to refuse to give the requested instructions of the defendant on this subject, as said charge involved the converse of the proposition on which the copy of the marks and brands was admitted as above set out. Defendant's bills of exception Nos. 4 and 5 are predicated upon the refusal of the court to instruct the jury as requested as to the identity and ownership of the calf in question. The defendant requested the court to instruct the jury as follows: "First. That unless they believed from the evidence, beyond a reasonable doubt, that the yearling killed by the defendant, if any was killed by him, was the same identical calf, and not another and different calf, of the cow described by Frank Young, the prosecuting witness herein, the jury will acquit the defendant. Second. That, before you will be authorized to convict the defendant in this case, you must believe from the evidence, beyond a reasonable doubt, and to a moral certainty, that the cow seen in the possession of the defendant by Terrell Winter, if any was seen in defendant's possession by said Winter, was the property of the said Frank Young, and that the calf of the said cow, at the time said Winter saw said cow in possession of the defendant, was the calf of the said cow, and that the calf was the same identical calf that was killed by the defendant, if any was killed by the said defendant, and unless you so believe you must acquit the defendant." And in this connection the proof was substantially as follows: The State proved that the cow of Frank Young, in the HY brand, which was his brand, was running on the range near where the defendant lived, and that she had a little red calf with some white on its face and breast and belly. The calf was known by a number of witnesses as the calf of Young's cow, and was unmarked, and not branded. On the day it was killed the defendant was seen driving the cow and calf, with four other head of cattle, down the lane, in the direction of Martin's pasture, and was seen to pen the same in said pasture. That evening defendant killed a calf in Martin's lot, which was of the same general description as the calf of the cow in question. The cow was turned on the range, and was seen the next day, and repeatedly thereafter, but the calf was never seen with her again. The defendant, who testified in his own behalf, claimed that the calf he killed was the calf of a cow that he had bought a number of years before, and that he had not seen her for a long time, until shortly before he had found her on the range there, with the calf, and that he drove her up and killed the calf on that evening. No other witnesses testify to this fact, but the defendant. The State introduced in rebuttal a witness who testified that he knew the bunch of cattle in the brand claimed by the defendant, but none of said

brand of cattle had been in that neighborhood for seven years. On this state of facts the court charged on circumstantial evidence, and, applying the law to the facts of the case, instructed the jury "that they must believe, beyond a reasonable doubt, before they could convict the defendant, that he fraudulently took from the possession of Frank Young the head of cattle charged, and that the same was his personal property, without the consent of the said Young," etc. Now, in order to find this fact, it was absolutely necessary for the jury to find the converse of the facts set up by the defendant, to-wit: that the calf he killed was his own; and in our opinion the charge given, involving a negative finding as to that asked, was sufficient. It will be noted that there is no affirmative charge to the effect that if the jury believed the calf in question was the property of the defendant, as testified by him, that they would find him not guilty. This would have been a direct and affirmative charge involving his theory, but even if this had been asked, in our opinion, the charge given involved directly a finding by the jury as to the theory of the defense set up by the defendant—that is, before they were authorized to find the defendant guilty, they were instructed, in accordance with the rules governing circumstantial evidence, to find that the animal in question was the property of Young; and, as stated before, we think this was all that was necessary. The testimony in the case sustains the verdict of the jury, and, there being no errors in the record, the judgment is affirmed.

*Affirmed.*